Maud Hadden Farrell v. Commissioner. Elizabeth Busch Pool v. Commissioner.
Farrell v. Commissioner
Docket Nos. 39043 and 45638.
United States Tax Court
1954 Tax Ct. Memo LEXIS 270; 13 T.C.M. (CCH) 239; T.C.M. (RIA) 54085; March 19, 1954
*270 Archibald A. Patterson, Esq., 1 Wall Street, New York, N. Y., for the petitioners. John J. Madden, Esq., and William G. O'Neill, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in gift tax for 1948 of $27,574.73 against Maud Hadden Farrell and one of $107,499.40 against Elizabeth Busch Pool. The issues for decision are whether either petitioner made a taxable gift in 1948 and, if so, the amount thereof. Findings of Fact Elizabeth Busch Pool was born on March 20, 1876. She had two children, the petitioner, Maud Hadden Farrell, who was born May 12, 1900, and Briton Hadden who died February 27, 1929. Crowell Hadden, III was Elizabeth's stepson. Elizabeth married William P. Pool prior to Briton Hadden's death. Briton Hadden's will was probated in New York where he resided at the time of his death. He left all of his property, except his personal effects, in trust, naming his brother, Crowell Hadden, III as trustee "To pay the income thereof & so much of the principal as she shall want or desire to my mother Elizabeth Busch Pool, during her life time & upon her death to devide the remainder of principal *271 & interest if any equally between my brother Crowell Hadden III & my step father William Pool & to pay the same over to them, in the event however that either of said persons does not survive my mother then the whole to the one surviving." The last paragraph of the will was as follows: "I have not remembered my beloved sister Maud in this will because she is already well provided for." The will was executed about a month before Briton died, the witnesses stating that the testator made his mark by guiding the pen. Crowell and Pool entered into an agreement on April 12, 1929, reciting provisions of Briton's will and that because of their love and affection for Maud, for whom no provision was made in the will, they desired to provide for her out of the trust fund to which one or both of them would be entitled upon the death of Elizabeth. The agreement provided that they were transferring to Maud, "her legal representatives, heirs and assigns, an equal part of all of our right, title and interest in and to the remainder of said trust fund" so that she would receive an equal one-third of the trust if both grantors survived Elizabeth, or an equal one-half if only one survived Elizabeth. *272 Crowell, Pool and Maud entered into an agreement dated January 5, 1931, providing that Pool was to have a life estate in the remainder but surrendered all of his other rights in the remainder, and Maud and Crowell would not receive possession of their shares in the remainder until the death of Pool at which time Maud or her issue would have one-half and Crowell or his issue would have the other half, with further provisions in case there were no such persons living. Crowell died on October 14, 1935, survived by a son born in 1920 and a daughter born in 1931, both of whom are still living. The Irving Trust Company became Successor Trustee after Crowell's death. A request from Elizabeth for the distribution of a substantial amount of the principal of the trust had been granted with the approval of the Surrogate's Court a number of years prior to 1941. She made another request in 1941 to have additional principal of the trust distributed to her, and the Successor Trustee obtained an order returnable on September 19, 1941, to show cause before the Surrogate's Court of New York why the Court should not instruct it to pay the entire trust estate then in its possession to Elizabeth. *273 Pool died on September 1, 1941, shortly after that order was issued. Maud at that time had two daughters, one born in 1924 and the other in 1926, both of whom are still living. The Court appointed a special guardian for the infant daughters of Crowell and Maud. The Court, in an opinion published June 1, 1942, held that the remainder vested absolutely in Pool who had survived Crowell, and that there were reasonable limitations upon the right to invade the principal of the trust on behalf of Elizabeth. It set a date for further hearing to determine the amount which Elizabeth might in good faith want or desire for her use, comfort, benefit or support. Elizabeth up to that time had not been represented by counsel in the proceeding but she then employed counsel. Numerous conferences were thereafter held by counsel representing Elizabeth, counsel representing Maud, the special guardian, counsel for the Successor Trustee, and counsel for the same bank named as trustee in the agreement of January 5, 1931. Elizabeth's existing right of appeal was considered, as well as the rights of Maud, her children, and Crowell's children under the assignment of 1929 and the agreement of January 5, 1931. A *274 compromise agreement was entered into dated December 18, 1943, as a result of the conferences providing, subject to the approval of the Surrogate's Court, that Elizabeth could withdraw no more than $200,000 of principal in periodic amounts of $40,000 each, but could make those withdrawals without limitation. The Surrogate's Court approved the agreement on January 6, 1944. The Surrogate's Court had no jurisdiction to determine the effect of the provisions of the agreements of April 12, 1929 and January 5, 1931, and it was understood by all of the parties that there would have to be further proceedings in the Supreme Court to resolve the questions which had arisen as a result of those instruments in order to settle the differences and prevent extended litigation. Further negotiations were conducted to that end by representatives of the parties as a result of which a further compromise agreement dated February 29, 1944, was entered into by Elizabeth, Maud, the adult son of Crowell, a special guardian for the minor daughter of Crowell, and the Successor Trustee under the agreement of January 5, 1931, subject to the approval of the Supreme Court. It referred to the compromise agreement *275 of December 18, 1943, the circumstances leading to that agreement, the uncertainty as to the legal effect of the agreements of April 12, 1929 and January 5, 1931, the controversy existing as to who would be entitled to the principal of the trust created by Briton's will upon the death of Elizabeth, and the desire of the parties to avoid the uncertainties, expense and delays of litigation. It proved that the principal of the trust upon the death of Elizabeth was to be divided into four equal parts, two of which were to be set aside for the benefit of Maud and her issue and the other two to be set aside for the benefit of the two children of Crowell. Maud, if she survived Elizabeth, was to have a life estate in the two parts, and at her death or at the death of Elizabeth, if Maud was then dead, one of those parts was to go to each of her daughters. That agreement was approved by a Justice of the Supreme Court of New York on May 26, 1948. It does not appear that either petitioner filed a gift tax return for 1948. The Commissioner, in determining the deficiency against Maud, held that she had made a gift in 1948 of $183,554.34, representing the value of the future interest in property *276 transferred by her under the terms of an agreement dated May 26, 1948, since such transfers were not made for an adequate and full consideration in money or money's worth. The Commissioner, in determining the deficiency against Elizabeth, held that she had made taxable gifts in 1948 of $492,601.66 to her grandchildren by the agreement approved on May 26, 1948, by the Supreme Court of New York. The differences between the parties which were settled by the two agreements, one dated December 18, 1943, the other dated February 29, 1944, were genuine and the agreements were entered into at arm's length. Neither Elizabeth nor Maud made a taxable gift in 1948 through the medium of the final settlements, the second and last of which was approved in that year. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner in his brief contends that there was no connection between the agreements of December 18, 1943, and February 29, 1944; there was no dispute between Elizabeth and Maud after January 6, 1944, when the Surrogate's Court approved their compromise agreement of December 18, 1943; and, therefore, Maud made a gift *277 to her children when she retained for herself only a life estate in one-half of the remainder interest in Briton's testamentary trust after the death of Elizabeth and transferred the remainder interest in that remainder interest to her two daughters. He abandons his determination that Elizabeth made a taxable gift in 1948 except as an alternative if it should be held that Maud did not make taxable gifts to her children. These contentions of the Commissioner are inconsistent with the proven facts. The controversies among Elizabeth, Maud, and the children of Crowell and Maud, the latter being represented while minors by special guardians, were not finally settled until the February 29, 1944 compromise was approved by the Supreme Court of New York in 1948. The agreement of December 18, 1943, was only one of the inseparable steps in the complete settlement of those controversies. The evidence indicates that Elizabeth never wanted to make a gift to anybody but was endeavoring to the best of her ability to obtain for herself the entire corpus of the testamentary trust, or at least as much of it as possible. Maud's rights were uncertain until the February 29, 1944 settlement was approved *278 in 1948. The 1943 agreement settled some of the uncertainties but not all. In fact, Maud may still fail to benefit personally if she should predecease Elizabeth, but the final settlement assured for her a life estate in one-half of the remainder interest in the testamentary trust in case she survives her mother whereas before she had no such assurance. She bargained for that assurance by agreeing to the terms of the two compromises which gave to the other interested parties uncontested rights to the balance of the interests in the remainders in the testamentary trust. All of the agreements were entered into at arm's length after extended negotiations. Each party endeavored to get as valuable rights as possible and, after bargaining, decided that the comprise was the best he could obtain. There can be no gifts under such circumstances since each is getting only that to which he or she is entitled, taking into consideration all of the uncertainties and possibilities. Catherine S. Beveridge, 10 T.C. 915, appeal dismissed December 1, 1948 (unreported). The questions of the values of the alleged gifts raised as alternative issues need not be decided. Decisions will be *279 entered for the petitioners.